IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW
JERSEY CAMDEN VICINAGE

CHAKA KWANZAA, et al.,

           Plaintiffs,

   v.

GIRARD TELL, et al.,

           Defendants.

Civil No. 19-16052 (RMB/AMD)

**OPINION**

**APPEARANCES:**

CHAKA KWANZAA, *pro se*
207 South Franklin Blvd.
Pleasantville, New Jersey 08232

**RENÉE MARIE BUMB**, United States District Judge:

    This matter comes before the Court upon *pro se* Plaintiff Chaka Kwanzaa's third attempt to successfully plead violations of his federal constitutional rights at the hands of various Pleasantville, New Jersey police officers. The alleged constitutional violations primarily occurred during an arrest of Plaintiff in January, 2019.[1] This Court has granted Plaintiff's IFP application, and therefore screens the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B). For the

---

[1] The claims are brought pursuant to 42 U.S.C. § 1983. The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

1

reasons stated herein, the Court holds that all but one of Plaintiff's claims[2] fail to state a claim upon which relief may be granted. The Court will, with great reluctance, allow the one sufficiently pled claim-- the Fourth Amendment claim based on the allegation that, during the search of the car in which Plaintiff was found, Defendant Tell improperly seized Plaintiff's diamond ring-- to proceed.

I. **FACTS**

The following facts are drawn from Plaintiff's somewhat disjointed 19-page Second Amended Complaint and the 38 pages of exhibits attached thereto, or incorporated therein by reference.[3] As discussed *infra*, several material differences exist between Plaintiff's allegations and the facts contained in the documents Plaintiff has attached to the Second Amended Complaint. Where

---

[2] As explained in a previous Order, the Court only considers Plaintiff Chaka Kwanzaa's claims, and not the claims of the other two named plaintiffs, because neither of the other two plaintiffs have paid a filing fee or applied for IFP status. Moreover, "Fourth Amendment rights are personal rights which may not be vicariously asserted." Plumhoff v. Rickard, 572 U.S. 765, 778 (2014). [Docket # 4, p. 2 n.2]

[3] See Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes."); see also, Mele v. Fed. Reserve Bank of New York, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (providing that a court may consider (1) exhibits attached to the complaint, (2) matters of public record, and (3) all documents that are integral to or explicitly relied upon in the complaint, even if they are not attached thereto, without converting the motion into one for summary judgment).

the facts as stated in the exhibits cannot be reconciled with the facts alleged in the pleading, the exhibit controls.[4]

At approximately 10:00 a.m. on January 4, 2019, Plaintiff was seated in the driver's seat of a parked car owned by his wife, Peggy Boler Kwanzaa. [Second Amended Complaint, "S.A.C." p. 15; Investigation Report, Docket No. 5 at p. 30 of 57 and 39 of 57[5]] Defendant Tell approached the parked vehicle. [S.A.C. p. 10] Plaintiff asserts that Defendant Tell had no reason to even approach the vehicle, suggesting that the sole fact that Plaintiff is African American was the reason Defendant Tell

---

[4] Bogie v. Rosenberg, 705 F.3d 603, 609 (7th Cir. 2013); Kinsey v. MLH Fin. Servs., Inc., 509 F. App'x 852, 853 (11th Cir. 2013); Bartlett v. Frederick County, Maryland, 246 F. App'x 201, 205 (4th Cir. 2007); U.S. ex rel. Riley v. St. Luke's Episcopal Hosp., 355 F.3d 370, 377 (5th Cir. 2004); GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997).
   Additionally, the Second Amended Complaint is also somewhat unusual in that it incorporates by reference a video of the incident that Plaintiff recorded from his cell phone which was placed on the car's dashboard. One day after the incident, Plaintiff uploaded the video to YouTube. Indeed, Defendant Tell's official investigation report reflects that, at the time of the arrest and search of the car, Defendant Tell knew that he was being recorded by the cell phone. [Docket No. 5 at p. 30 of 57 and 39 of 57] His report also contains the URL for the YouTube video Plaintiff posted under his own name, and states that a copy of the video was "downloaded . . . to a CD-R which was logged into evidence." [Id. at p. 39 of 57] Plaintiff's recording of the incident remains publicly available on YouTube, and the Court has reviewed it.

[5] Only pages "1 of 3" and "3 of 3" of the Investigation Report have been filed with the Court. For the remainder of this opinion the Court will cite this document as "Investigation Report."

approached the vehicle.  The Investigation Report tells a different story.  The report states the vehicle looked "suspicious" because:

> earlier in [Defendant Tell's] patrol shift [Tell] observed this same vehicle parked on Linden Avenue between the properties of 730 Linden Avenue and 21 West Reading Avenue.  The area where the vehicle was parked [was located] across from 619 Church Street between the properties of 624 and 618 Street.  Both locations [where] the vehicle was parked were distant from residences on either side.  I travel these roads nearly every patrol shift day / night and know that these areas are not commonly used for parking.

[Investigation Report][6]

The video recording of the incident begins at this point.  The video shows a police car, with its lights flashing, pull-up behind the car in which Plaintiff is sitting.  Defendant Tell approaches the passenger side of the car, which appears to be next to the sidewalk.  He identifies himself by name to the Plaintiff through the window which Plaintiff had opened to speak with the officer.  Defendant Tell then sees marijuana on the center console of the car.  He walks around the back of the car,

---

[6] Plaintiff alleges that this "report was proven to be false when plaintiff requested his cellular telephone location records, which confirmed that he was not in the area [of Linden Avenue]" earlier in that day. [S.A.C. p. 10]  Even accepting as true Plaintiff's allegation that he was not at Linden Avenue on that day, that alleged fact is not inconsistent with Defendant Tell's report that he observed "the vehicle"-- not Plaintiff himself-- at Linden Avenue.  Therefore, the Court does not accept the conclusory statement that Defendant Tell's report was "proven to be false."

4

to the drivers' side. Plaintiff asks, "What happened?" Defendant Tell directs Plaintiff to "get out of the vehicle." Rather than comply with Defendant Tell's command, Plaintiff asks "what happened sir?" Defendant Tell responds, "I can see the blunt on the center console." Plaintiff becomes agitated and yells, "I have a license!" while simultaneously shifting in his seat in an apparent attempt to pull something out of his back pocket. Defendant Tell responds, "You're getting out of the car," and Plaintiff yells again, "I have a license. I'm getting ready to show you the license," as he begins to exit the car.

At this point, the video continuously displays the empty vehicle as the words exchanged by Defendant Tell and Plaintiff outside the car are somewhat difficult to decipher. Plaintiff, however, can be heard yelling something about having "a license for it" and a "medical" reason for having the marijuana. Defendant Tell responds "well, we'll figure that out," while Plaintiff continues to yell agitatedly about something or someone being "arbitrary." The next clear statement that can be heard is Defendant Tell saying in a raised voice, "I don't have to ask questions! It's right in plain view!" Plaintiff continues to yell, and Defendant Tell directs Plaintiff to "shut your mouth." Plaintiff continues yelling and Defendant Tell directs him to "put your hands together." Plaintiff yells, "my hands are together! Marijuana! Marijuana! I have a license!"

5

While Plaintiff continues to yell, Defendant Tell yells, "you're not allowed to smoke and drive," to which Plaintiff responds "I'm not driving!"

Defendant Tell then commands Plaintiff three consecutive times to "face the car," while Plaintiff continues to yell that he's "a paralegal. Camera's on. I'm about to show you my ID card." Next, the sound of handcuffs can be heard on the video and Plaintiff says "put me in cuffs." Plaintiff continues to yell about his "ID card" to which Defendant Tell yells back, "I don't care!" Plaintiff continues to yell.

At this point the voices on the recording become more faint, as if the people are moving further away from the car, and Plaintiff can be heard saying, "what'd you have to do this for man?" and Defendant Tell responds, "I told you, you had marijuana in plain view. That's the problem." More muffled conversation continues and then Defendant Tell can be heard yelling, "I'm glad the camera's on! Because you know what? It has everything on video. That's perfect."

Later on, Defendant Tell yells, "Well you know what? That's fine if you have an ID card. That's fine but what you're doing is illegal." Plaintiff yells, "What am I doing? I'm on the phone! I'm sitting in the car on the phone," to which Defendant Tell responds, "and then you wanted to get all extra." Plaintiff responds, "You had to know man, I'm no threat. I'm no

threat. I told you I'm a paralegal." Defendant Tell responds calmly, "Spread your legs. Just hang right here."

Shortly thereafter, another police car arrives, and a male officer who Plaintiff alleges is Defendant Van Syckle, says to Plaintiff, "Why don't you calm down?" Plaintiff then recounts his version of events to the newly arrived officer, repeatedly saying "Look at the video! Look at the video!" Later on, Defendant Tell can be heard on the video saying, "you keep using the word 'arbitrary.' You know what the charge is? Possession of marijuana. Possession of prescription pills, whatever you got in there. Probably fentanyl. Probably fentanyl pills."

Plaintiff vaguely alleges that it was around this time that "he was assaulted by [D]efendants Tell and Van Syckle causing injury to plaintiff." [S.A.C. p. 11] The alleged "assault" cannot be heard on the cell phone recording. Plaintiff also alleges that he suffered chest pains and "injury to his low back" as a result of the alleged "assault," but Plaintiff's discharge report from AtlantiCare Regional Medical Center only references "chest pain," not any injury to any other part of Plaintiff's body. [Dkt. No. 5, p. 31 of 57]

At 4 minutes and 20 seconds into the recording, a uniformed officer appears in the video, reaching into the center console of the car through the open driver's side door. The officer proceeds to conduct a search of the contents of the center

7

console.  Plaintiff can be heard in the background speaking with a raised voice the entire time.  At 5 minutes and 59 seconds into the recording, the officer appears to briefly look directly at the camera on the dashboard.

The video continues for many more minutes, recording Officer Tell and Officer Van Syckle searching the car and taking pictures of evidence.  At 11 minutes and 16 seconds into the recording, a uniformed police officer, who Plaintiff alleges is Defendant Tell, reaches into the center console, withdraws an object, and places it in the pocket of the officer's pants.  Plaintiff alleges that the object was a diamond ring.  [S.A.C. p. 11-12]

The Investigation Report states that Plaintiff was charged with three crimes arising out of the incident on January 4, 2019: possession of cocaine / heroin, in violation of N.J.S.A. 2C:35-10A(1); possession of marijuana in violation of N.J.S.A. 2C:35-10A(4); and obstruction of justice in violation of N.J.S.A. 2C:29-1.  On February 25, 2019, the Atlantic County Prosecutor wrote to Plaintiff advising him that the complaint was being "return[ed]" "to the Pleasantville Municipal Court as a downgrade." [Dkt. No. 5, p. 27 of 57]

Plaintiff further alleges that, in an apparently separate incident occurring on July 7, 2017, "Defendant Gamble issued a

false ticket based on an inaccurate record maintained by the Pleasantville Police Department." [S.A.C. p. 9]

Lastly, Plaintiff alleges that at some unspecified time, "Defendants Gamble, Evans, Correa and Sgt. Gresham abused their authority as court officers when they placed plaintiff in handcuffs and then confined him in a jail cell at the courthouse solely for exercising his constitutional right to represent himself at the proceeding in the Pleasantville Municipal Court." [S.A.C. p. 15-16]

## II.  **LEGAL STANDARD**

A complaint filed by a litigant proceeding *in forma pauperis* is subject to *sua sponte* dismissal by the Court if the case is frivolous or malicious or fails to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B).  In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the *pro se* party.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).

"The complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Id. at 663. "[A]n unadorned, the defendant-unlawfully-harmed me accusation" does not suffice to survive a motion to dismiss. Id. at 678. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

In reviewing a plaintiff's allegations, a district should conduct a three-part analysis:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Third, when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (internal citations, quotations, and modifications omitted) (quoting Iqbal, 556 U.S. at 675, 679).

## III. **DISCUSSION**

The Second Amended Complaint fails to cure most of the pleading deficiencies identified in this Court's previous Order of September 13, 2019. [Dkt. No. 4] Before turning to those claims and factual allegations, however, the Court addresses the

new allegations included for the first time in the Second Amended Complaint.

The Court's previous Order stated that "Plaintiff fails to state a claim against Defendants Gresham, Gamble, Evans, and Correa as there are no factual allegations as to these Defendants." [Dkt. No. 4] In response, Plaintiff has now added the vague, rather unadorned and conclusory allegation that at some unspecified date, all four officers-- without specifying which officer did what-- placed Plaintiff in handcuffs and placed him in the holding cell at Pleasantville Municipal Court for some unspecified time. Plaintiff has not pleaded sufficient facts to put the Court or Defendants on adequate notice of the nature and circumstances of Plaintiff's legal claim. Therefore, Plaintiff fails to state a claim.

Plaintiff also alleges that "[o]n July 7, 2017 Defendant Gamble issued a false ticket based on an inaccurate record maintained by the Pleasantville Police Department" showing that Plaintiff's driver's license was suspended. [S.A.C. p. 9, ¶ 7] Construing this allegation as a malicious prosecution claim, Plaintiff has failed to plead facts plausibly supporting a conclusion that Defendant Gamble lacked probable cause to issue the ticket. See Pulice v. Enciso, 39 F. App'x 692, 696 (3d Cir. July 17, 2002) ("Under § 1983, false arrest, false imprisonment, and malicious prosecution claims require a showing that the

11

arrest, physical restraint, or prosecution was initiated without probable cause."); see also, Wright v. City of Philadelphia, 409 F.3d 595, 604 (3d Cir. 2005) ("Wright bases her malicious prosecution claim on alleged Fourth Amendment violations arising from her arrest and prosecution. To prevail on this claim, she must show that the officers lacked probable cause to arrest her."). Plaintiff pleads that Defendant Gamble issued a ticket relying a record maintained by the police department, and Plaintiff pleads no facts suggesting that Defendant Gamble knew that the record was inaccurate. Thus, Plaintiff's malicious prosecution claim against Defendant Gamble fails.

Turning to the claims from the First Amended Complaint that are reasserted in the Second Amended Complaint, the Court previously held that Plaintiff failed to state a claim for racial profiling because the claim was "based on bald, conclusory assertions without any supporting factual allegations other than the lone allegation that Plaintiff Chaka Kwanzaa is African-American." [Dkt No. 4, p. 5] The Court specifically enumerated the facts a plaintiff must allege to support a racial profiling claim [Id. at p. 5 n.5], yet Plaintiff's Second Amended Complaint still fails to state a claim. There are no facts alleged that support a plausible inference that Defendant Tell was motivated by Plaintiff's race when he approached the vehicle in which Plaintiff sat on the morning of January 4,

12

2019. Even if the Court were to accept Plaintiff's assertion that Defendant Tell had no reason to approach the vehicle-- a position that is undermined by the Investigation Report-- the absence of a justification (i.e., the allegation that Defendant Tell's and Van Syckle's actions were "arbitrary") does not support the plausible inference that the Defendants "were motivated by a discriminatory purpose." Bradley v. United States, 299 F.3d 197, 205 (3d Cir. 2002); see also, Johnson v. Crooks, 326 F.3d 995 (8th Cir. 2003) (combination of an arbitrary stop with a difference in race between person stopped and officer does not establish *prima facie* case of racial discrimination).[7] Accordingly, Plaintiff has failed to state a claim for racial profiling against Defendants Tell and Van Syckle.

Similarly, the Second Amended Complaint fails to state a claim for individual supervisory liability against Defendants Riggins and Williams for two reasons. First, Plaintiff has failed to state an underlying racial profiling claim against Defendants Tell and Van Syckle and therefore, the attendant

---

[7] As noted above, the Investigation Report does not support Plaintiff's allegation that Defendant Tell "falsely swore" that he saw Plaintiff on Linden and Reading Avenues earlier that morning (the Investigation Report reflects that Defendant Tell stated he saw the "vehicle" at that location), and so the Court excludes this alleged fact from the legal analysis.

13

claim that their supervisors are also liable for that alleged constitutional violation must fail as well. Reedy v. Evanson, 615 F.3d 197, 231 (3d Cir. 2010) ("In order to establish supervisory liability, [plaintiff] must show that [the supervisor] participated in violating her rights, or that he directed others to violate them, or that he, as the person in charge . . . , had knowledge of and acquiesced in his subordinates' violations."). Second, Plaintiff merely alleges that "Defendants Riggins and Williams supervise and train [D]efendants Tell and Van Syckle, particularly the 'Street-Crimes' Unit as it pertains to massive illegal stops and warrantless searches of vehicles driven by African-Americans in the city of Pleasantville, New Jersey" [S.A.C. p. 13]. This statement is vague and conclusory, and unsupported by any factual allegations concerning what Defendants Riggins and Williams allegedly did or did not do.[8]

---

[8] Plaintiff has only sued individual police officers-- he has not sued the City of Pleasantville, nor the Pleasantville Police Department-- and so the Court does not construe the Second Amended Complaint as asserting any municipal liability claims under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).

    Alternatively, the Second Amended Complaint fails to plead sufficient facts-- as opposed to conclusory statements-- supporting municipal liability. The allegation that the Chief of Police, Defendant Riggins, announced that the police department "would address a rash of gun violence incidents by adopting 'a more aggressive search practice' during motor vehicle stops" [S.A.C. p. 12] does not plausibly support an conclusion that the police department adopted a policy of racial profiling.

With regard to Plaintiff's Fourth Amendment excessive force claim against Defendants Tell and Van Syckle, the Court previously ruled that "Plaintiff [] fails to state a claim for violation of his Fourth Amendment right to be free from excessive use of force during a stop or arrest--Plaintiff's vague factual allegation that Defendants Tell and Syckle 'forcefully removed Plaintiff from his vehicle causing injury to Plaintiff' is insufficient to plausibly support a conclusion that the Defendants used *unreasonable* force in violation of the Fourth Amendment." [Dkt. 4, p. 5] (italics in the Order). The Court cited the many factors it considers in determining whether the amount of force was unreasonable in violation of the Fourth Amendment. However, as to this claim, the Second Amended Complaint is virtually unchanged from the First Amended Complaint. Plaintiff has merely added two, mainly conclusory, sentences that do not provide sufficient facts to sustain an excessive force claim. Specifically, Plaintiff alleges that:

> [o]nce Plaintiff was out of his vehicle he was assaulted by [D]efendants Tell and Van Syckle causing injury to Plaintiff, who was later transported to the hospital with chest pains. The 'wanton' infliction of unnecessary pain and injury caused plaintiff to suffer an anxiety attack, with chest pains and injury to his lower back.

[S.A.C., p. 11] These allegations are insufficient because they provide no information concerning what Defendants Tell and Van Syckle each allegedly did, nor what type of force was used, nor

15

how the Defendants' actions allegedly caused Plaintiff's alleged injuries.[9]

Plaintiff's Fourth Amendment claim based on the allegedly warrantless search of the car also fails. The search of the passenger compartment and center console of the car were incident to Plaintiff's arrest for possession of marijuana, and therefore the search was reasonable under the Fourth Amendment. See Arizona v. Gant, 556 U.S. 332, 343–44 (2009) ("we [] conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein.") (internal citations and quotations omitted).

---

[9] That the sounds of the alleged "assault" on Plaintiff cannot be heard-- or at least cannot be deciphered-- on the cell phone video recording is not necessarily inconsistent with Plaintiff's allegation that he was, indeed, assaulted. Therefore, the Court does not reject Plaintiff's allegations concerning the alleged assault. To the contrary, the Court has carefully considered all factual allegations concerning the alleged assault and finds those allegations, irrespective of the video recording, to be insufficient as a matter of law.

16

Finally, the Court reaches Plaintiff's allegation that Defendant Tell stole Plaintiff's diamond ring out of the car while conducting the search of the car. The Court's previous Order stated that it was difficult to understand the nature of Plaintiff's legal claim based only on the "brief" allegation that Defendant Tell "stole" a diamond ring from the car. [Dkt No. 4, p. 6] The Second Amended Complaint only slightly elaborates on what Plaintiff alleges happened: Defendant Tell allegedly "stole" the ring by "placing [it] in his pocket contrary to department policy of securing any evidence in an evidence bag." [S.A.C. p. 11-12]

The Court finds it curious, indeed, that an allegation as serious as stealing a diamond ring consumes only three sentences and is buried on page 11 of Plaintiff's 19-page Second Amended Complaint. Particularly after the Court's previous Order put Plaintiff on notice that he should elaborate on this claim [Dkt. No. 4], the Court is left to wonder why Plaintiff has so little to say about it. Moreover, the allegation that Defendant Tell stole a diamond ring, when he knew that his actions were being recorded on video, significantly strains the plausibility standard that this Court applies to pleadings.

However, the Fourth Amendment prohibits unreasonable searches and seizures, and the allegation that Defendant Tell stole a diamond ring during the course of the search at issue

17

does-- at the pleadings stage, construing the *pro se* pleading liberally-- state a claim for violation of the Fourth Amendment, although just barely. In light of the alleged facts and circumstances of the car search-- particularly the relatively small amount, and type, of drugs found in the car-- the Second Amended Complaint supports the plausible conclusion, at this early stage of the case, that Defendant Tell lacked the requisite probable cause to seize the diamond ring as evidence. See Soldal v. Cook Cty., Ill., 506 U.S. 56, 69 (1992) ("[S]eizures of effects that are not authorized by a warrant are reasonable only because there is probable cause to associate the property with criminal activity. . . . [S]uch seizures must satisfy the Fourth Amendment and will be deemed reasonable only if the item's incriminating character is immediately apparent[.]").[10] Thus, the Court will allow this Fourth

---

[10] Probable cause must be considered in light of the totality of the circumstances. See generally, D.C. v. Wesby, 138 S. Ct. 577, 586 (2018) ("Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.") (internal citations and quotations omitted). How the "totality of the circumstances" looks after the factual record has been developed through discovery-- for example, after Defendant Tell has been deposed-- might look quite different than the picture presented here at the pleading stage. Those additional facts may very well support a conclusion that Defendant Tell did have probable cause to seize Plaintiff's property, or those facts may support a conclusion that Defendant Tell is entitled to qualified

Amendment claim to proceed.[11]  However, if, during the course of subsequent proceedings, the evidence demonstrates that Plaintiff has brought this claim in bad faith, the Court will not hesitate to impose any and all appropriate sanctions, which may include, but are not limited to, the assessment against Plaintiff of Defendant's attorney's fees and costs, and if Plaintiff is found to have made a false statement under oath, referral to the appropriate prosecutorial authority.

IV. **CONCLUSION**

For the reasons stated herein, the Court holds that this case may proceed as to the § 1983 Fourth Amendment claim against Defendant Tell, in his individual capacity, based on the allegation that Tell improperly seized Plaintiff's diamond ring. All other claims will be dismissed with prejudice for failure to state a claim.  An appropriate order accompanies this opinion.

DATED: October 28, 2019

s/Renée Marie Bumb\_\_\_
RENÉE MARIE BUMB
UNITED STATES DISTRICT JUDGE

---

immunity.

[11] Assuming that: (a) Plaintiff wishes to continue this suit despite the dismissal of all but one of his claims, and (b) proper service is made upon Defendant Tell, the parties are expected to appear at the Rule 16 conference (to be scheduled by Magistrate Judge Donio at a future time) prepared to promptly commence expedited discovery in this case.